UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN O'DELL, <br><br> Plaintiff, <br><br> v. <br><br> AVALARA, INC., BRUCE CRAWFORD, ROBIN FOOTE, EDWARD GILHULY, BILL INGRAM, MARCELA MARTIN, SCOTT MCFARLANE, TAMI RELLER, BRIAN SHARPLES, RAJEEV SINGH, SRINIVAS TALLAPRAGADA, and KATHY ZWICKERT, <br><br> Defendants. | Civil Action No. 22-cv-7720 <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Avalara, Inc. ("Avalara or the "Company") and the members Avalara' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Avalara by affiliates of Vista Equity Partners Management, LLC ("Vista").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on August 23, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Lava Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Lava Intermediate, Inc. ("Parent"), will merge with and into Avalara with Avalara surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 8, 2022 (the "Merger Agreement"), each Avalara stockholder will receive $93.50 in cash (the "Merger Consideration") for each Avalara share owned.

3. As discussed below, Defendants have asked Avalara' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Avalara' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Avalara stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Bruce Crawford has served as a member of the Board since July 2021.

11. Individual Defendant Robin Foote has served as a member of the Board since May 2011.

12. Individual Defendant Edward Gilhuly has served as a member of the Board since March 2011.

13. Individual Defendant Bill Ingram has served as a member of the Board since January 2020.

14. Individual Defendant Marcela Martin has served as a member of the Board since September 2021.

15. Individual Defendant Scott McFarlane has served as a member of the Board since May 2004 and is the co-founder and Chief Executive Officer of the Company.

16. Individual Defendant Tami Reller has served as a member of the Board since July 2014.

17. Individual Defendant Brian Sharples has served as a member of the Board since April 2020.

18. Individual Defendant Rajeev Singh has served as a member of the Board since March 2017.

19. Individual Defendant Srinivas Tallapragada has served as a member of the Board since July 2021.

20. Individual Defendant Kathy Zwickert has served as a member of the Board since January 2019.

21. Defendant Avalara is a Washington corporation and maintains its principal offices at 255 South King Street, Suite 1800, Seattle, Washington 98104. The Company's stock trades on the New York Stock Exchange under the symbol "AVLR."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

24. Avalara, together with its subsidiaries, provides cloud-based solutions for transaction tax compliance worldwide. The Company offers a suite of compliance solutions that enable businesses to address the complexity of transaction tax compliance; process transactions in

real time; produce detailed records of transaction tax determinations; and reduce errors, audit exposure, and total transaction tax compliance costs. The Company's solutions include AvaTax, a solution for determining sales tax in the United States; Avalara Compliance Cloud Returns for tax return preparation, filing, and remittance; which creates, validates, stores, and manages sales tax exemption. It also provides professional services, including nexus studies and back filing services, voluntary compliance initiatives, tax registrations, reverse audits, audit defense, and specialized tax research. The Company was formerly known as Advantage Solutions, Inc. and changed its name to Avalara, Inc. in December 2005. Avalara was incorporated in 1999 and is headquartered in Seattle, Washington.

25. On August 8, 2022, the Company announced the Proposed Transaction:

> SEATTLE, WA — August 8, 2022 — Avalara, Inc. (NYSE: AVLR), a leading provider of tax compliance automation for businesses of all sizes, today announced it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data, and technology-enabled businesses, in partnership with institutional co-investors.
>
> Under the terms of the agreement, Vista will acquire all outstanding shares of Avalara common stock for $93.50 per share in an all-cash transaction valued at $8.4 billion, inclusive of Avalara's net debt. The per share purchase price represents a premium of 27 percent over the Company's closing share price as of July 6, 2022, the last trading day prior to media reports regarding a potential transaction.
>
> Founded in 2004, Avalara's success is built up on an extensive partner network; large tax content data and repository to help customers stay up to date on dynamic tax rules and regulations; and its cloud-native, end-to-end multi-product tax compliance portfolio. In partnering with Vista, Avalara will look to build on its successful platform by refining its go-to-market strategy, expanding its international workforce, streamlining its systems architecture, and continuing to pursue value-accretive M&A opportunities.
>
> "For nearly two decades, Avalara has ambitiously pursued its vision to automate global compliance, making tax less taxing for

businesses and governments around the world. As a leader in this category, we believe our continued investment in innovation and experience is exciting for our customers, partners, and employees. We are pleased to partner with Vista and will benefit from their expertise in enterprise software as we build and improve upon our cloud compliance platform," said Scott McFarlane, co-founder and CEO of Avalara.

"Vista has built a reputation as a preferred partner for founder-led, next-generation software companies," said Monti Saroya, Co-Head of Vista's Flagship Fund and Senior Managing Director. "We look forward to working with Scott and the entire Avalara team to advance their vision and continue delivering innovative solutions to customers."

"Avalara is a mission-critical platform serving customers in a variety of end-markets, including retail, manufacturing, hospitality, and software," said Adrian Alonso, Managing Director at Vista. "Avalara's solutions, its commitment to product innovation, and its network of extensive partner integrations, resellers, and accountants make it a true leader in the space."

**Transaction Details**
The transaction, which was unanimously approved by the Avalara Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Avalara shareholders and receipt of regulatory approval. Closing of the transaction is not subject to a financing condition.

Upon completion of the transaction, Avalara's shares will no longer trade on the New York Stock Exchange, and Avalara will become a private company. The company will continue to operate under the Avalara name and brand.

**Advisors**
Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Avalara, and Simpson Thacher & Bartlett LLP and Perkins Coie LLP are acting as legal counsel.

Kirkland & Ellis LLP is acting as legal counsel for Vista.

\* \* \*

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Avalara's stockholders are provided with the material information that has been

6

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

27.     On August 23, 2022, Avalara filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.     The Proxy Statement fails to provide material information concerning financial projections by Avalara management and relied upon by Goldman Sachs in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in May and July 2022 (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Avalara management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-Gaap Gross Profit, Non-Gaap Operating Income, Unlevered Free Cash Flow, and Unlevered Free Cash Flow (including stock-based compensation), but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

        non-discretionary expenditures that are not deducted from the measure.[1]

32.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33.    With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Avalara; (ii) the inputs and assumptions underlying the range of perpetuity growth rates of 2.0% to 4.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 11.50% to 15.50%; (iv) the Company's weighted average cost of capital; (v) Avalara's total debt and debt-like items; (vi) the present value of Avalara's net operating losses for the fiscal years 2022 through 2042; (vii) Avalara's unrestricted cash and cash equivalents as of June 30, 2022; and (viii) the number of fully diluted shares of Avalara common stock outstanding.

34.    With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the EV/NTM revenue multiples of 6.5x to 9.5x; (ii) Avalara's total debt and debt-like items and unrestricted cash and cash equivalents as of December 31 for each of the fiscal years 2022 to 2024; (iii) the number of projected year-end fully diluted outstanding shares of Avalara common stock for each of the fiscal years 2022 to 2024; and (iv) the inputs and assumptions underlying the illustrative discount rate of 13.75%.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

35. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

36. With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose the companies reviewed and analyzed and the premia paid for the transactions.

37. With respect to Goldman Sachs' *Selected Public Company Comparables* analysis, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Avalara within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Avalara, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Avalara, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Avalara, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.       Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 9, 2022                             **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*